IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

LAFE DUNN

Plaintiff,

 vs.

SOUTHWEST AIRLINES CO. and
SOUTHWEST AIRLINES CO. VOLUNTARY SEPARATION PROGRAM 2020

Defendants

---

### COMPLAINT

---

COMES NOW the plaintiff Lafe Dunn ("Dunn" or "Captain Dunn") and complains as follows:

### JURISDICTION AND VENUE

1. This is an action against defendant Southwest Airlines Co. Voluntary Separation Program 2020 ("VSP" or "Plan")  for benefits under § 502 of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq., ("ERISA"); to enforce Captain Dunn's rights; and for a declaration of his rights.

2.  This action is also brought against defendant Southwest Airlines Co. ("SWA") under ERISA §502(a)(3), 29 U.S.C. § 1132(a)(3) for equitable relief for breaches of fiduciary duty committed by SWA.

3.   This Court has subject matter jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

4. Venue is proper in this district under ERISA § 502(e)(2), 29 U.S.C. §1132(e)(2), as it is the district in which Captain Dunn resides and the alleged breaches were committed.

**PARTIES**

5.  SWA is a business incorporated in the state of Texas, operating Southwest Airlines, a major passenger airline that provides scheduled air transportation in the United States and near-international markets.  Denver International Airport is a SWA hub.

6. SWA is the ERISA-designated Plan Administrator for the VSP, and acts as fiduciary claims administrator for the VSP as well.

7.  Commencing in or about May 2020, and with an effective date of June 1, 2020, SWA formed the VSP as an ERISA-qualified severance pay plan for eligible employees.  A true and correct copy of organic Plan documents as provided to Captain Dunn and identified further below are attached hereto as Exhibit 1. ("Southwest Airlines Co. Voluntary Separation Program 2020"); Exhibit 2. ("Southwest Airlines Co. Voluntary Separation Program 2020 Addendum for Eligible Pilots"); and Exhibit 3. ("Southwest Airlines Voluntary Separation Program 2020 (VSP 2020) For Eligible Pilots Program Details").

8.  A true and correct copy of the Summary Plan Description of the VSP is attached hereto as Exhibit 4.

9.  Additional documents, none designated as Plan documents, were released by SWA at or about the same time as Exhibits 1 – 4, and are attached hereto as Exhibit 5. ("Voluntary Separation Program 2020 Eligible Pilots Terms & Conditions And Initial Release Of Claims") and Exhibit 6. ("Voluntary Separation Program 2020 (VSP 2020) Frequently Asked Questions — Pilots, Effective June 9, 2020").

10.  Captain Dunn is an individual resident of Elbert, Colorado.  He became an employee of defendant SWA on or about December 27, 2006.

11.  As of May 2020, Captain Dunn was a pilot at SWA, and an eligible participant in defendant VSP as of June 1, 2020.

## BACKGROUND FACTS

12.  Captain Dunn began employment at Southwest Airlines as a pilot in 2006 after having served as a pilot in the Air Force for more than nine years.

13.  For some period of time prior to May 2020, Captain Dunn experienced some trauma in his personal life which led him to begin to drink more than he thought wise in light of his position as a pilot and as the (by then) custodial parent of his 10-year old son.  As a result, on May 25 he called a union representative to discuss taking a leave to deal with his personal stress and mental health issues.

14.  Captain Dunn's call triggered a series of events which led to him being immediately referred to a program known as HIMS ("Human Intervention Motivation Study"), an occupational substance abuse treatment program specific to commercial pilots, that coordinates the identification, treatment, and return to work process for affected aviators.  Referral to HIMS, in turn, led automatically to Captain Dunn's loss of his medical certification as a commercial pilot, and his referral to in-patient treatment.

15.  As an employee of SWA, Captain Dunn is a member of a collective bargaining unit covered by a certain collective bargaining agreement ("CBA") between SWA and the Southwest Airlines Pilots Association.  The CBA provides, *inter alia*, sick leave benefits for bargaining unit employees; distinguishes sick leave from medical leave of absence; and mandates a variety of fringe benefits for members of the bargaining unit who are actively employed, including those on

sick leave.  A true and correct copy of relevant portions of the agreement are attached hereto as Exhibit 7.[1]

16.   SWA Denver Chief Pilot Jim Wahl controlled Captain Dunn's scheduling as of the dates relevant to this dispute, and as part of that function, made entries into an on-line scheduling document known as the "CSS Crew Access" form for Captain Dunn.  Using that authority, Captain Wahl listed Captain Dunn as going on sick leave as of May 26 and through June 19.  A true and correct copy of Captain Dunn's contemporaneous CSS Crew Access Form is attached hereto as Exhibit 8.

17. SWA's payroll system provides payment retroactively for work already performed. Under SWA's system, Captain Dunn's contemporaneous June 19 paystub reflects pay for hours flown in May; the "July 20" paystub reflects Captain Dunn's payment as an active employee in the first half of June.    Exhibit 9.

18.   While on sick leave, Captain Dunn:

   a.   Continued to receive employer provided-health insurance on the same terms as any active employee;

   b.   Continued to be covered by active employee group life and accidental death and dismemberment insurance coverage applicable to his earnings bracket;

   c.   Continued to accrue vacation leave time;

   d.   Continued to accrue seniority as a SWA pilot;

   e.   Continued both to make employee contributions into the Southwest Airlines Pilots 401(k) Plan and to have contributions into the Plan made by SWA;

---

[1] The collective bargaining agreement utilizes the acronym "TFP" without defining it.  It refers to "Trips for Pay."

     f.   Received credit toward his computed annual compensation for purposes of the Southwest Airlines Co. Profit Sharing Plan;

     g.   Continued to have contractual rights to take "non-rev[enue]" flights, i.e. to take SWA flights without paying under certain circumstances.

19.   During a period of "extended sick leave," a pilot under the CBA "will have the option of taking a minimum of fifty percent (50%) of the bottom line TFP total for the awarded bid line as sick leave. . . [t]his reduced use of sick leave will have the effect of extending the pilot's health care benefits and lengthening the time period until the actual last day paid."   Only "[a]t the total exhaustion of sick leave, [does] the one hundred twenty (120) day leave of absence plan continuation period [] begin (normal employee contributions, if any, will be required) followed immediately by the beginning of COBRA continuation, if elected by the pilot." Exhibit 7, Section 12.8.

20. On June 20, Captain Dunn was transitioned from sick leave to medical leave of absence and short-term disability, at which time he ceased to receive pay from SWA.  If his disability continues until on or about December 2020, he can transition to long term disability, and will continue to be paid by the insurance plan, and not by SWA.

21.  The VSP was adopted on May 29, 2020, and was effective as of June 1, 2020.  *See* Exhibit 1.

22.  On or about July 15, 2020, after being urged to apply for the VSP and told he would qualify by Chief Pilot Wahl, Captain Dunn applied for the VSP.

23. On July 15, 2020, Captain Dunn was informed that his application for VSP was denied.

24.  On August 5, 2020, Captain Dunn requested reconsideration of the denial of his VSP. Exhibit 10.

25.  On August 19, Captain Dunn's request for reconsideration was denied by SWA Senior Attorney Chad Mead.  Exhibit 11.  The August 19 letter wrongly states that Captain Dunn was on medical leave of absence on June 1, 2020. In fact, he was on sick leave on that date.

26. Attorney Mead's August 19 letter identifies Exhibits 1 – 4 as "all Plan documents."

27.  Mr. Mead's letter does not contain any information identifying "[a] description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary," in violation of 29 CFR § 2560.503-1(g)(1)(iii).  Lacking such information, Captain Dunn was unable to prepare a full and complete appeal of the denial of his claim.

28.  Captain Dunn responded to Mr. Mead's letter on August 26, 2020.  Exhibit 12.

29.  On October 2, 2020 Julie Weber, "Vice President and Chief People Officer" for SWA responded to Captain Dunn's August 26 letter, Exhibit 13., once again denying his claim for the VSP and specifically

 a. re-asserting the inaccurate statement made previously that Captain Dunn was on medical Leave of Absence on June 1; and

 b. asserting for the first time that "The Plan further provides that the Company decides in its reasonable discretion may determine whether, on June 1, 2020, it expects a leave of absence to continue for six or more months. Your denial for VSP benefits was based on the expectation that your leave of absence would continue for six or more months."

30.  SWA pilots can access "Sick Leave and OJI [on-the-job injury] Reports" that reflect their sick leave and OJI usage and accrual on a monthly basis. Captain Dunn's Sick Leave and OJI Report for June 2020 reflects that he used 84.42 units of sick leave in June, and that his "LDP" (or "last day paid") was on June 20. A true and correct copy of this report is attached as Exhibit 14.

The LDP is the day on which the Collective Bargaining Agreement begins to distinguish between active employees and those on medical leave. *See* Exhibit 7, Sec. 12

31. On October 4, 2020, Captain Dunn requested "all documentation that led to the denial of my election (and appeal) for VSP benefits. Especially, any and all correspondence or documentation supporting the assumption and conclusion that Southwest expects me to be inactive for 6 or more months total, from 1 June 2020." Exhibit 15.

32. In response to Captain Dunn's October 4 request, SWA provided him with:

  a.  The VSP Plan document, Exhibit 1, with the addendum for pilots, Exhibit 2;

  b.  The VSP Summary Plan Description, Exhibit 4;

  c.  The VSP Terms & Conditions, Exhibit 5; and

  d.  Exhibit 16., an "HRIS" record, purporting to prove that he was on a medical Leave of Absence beginning May 26, 2020.  This document is inconsistent with the contemporaneous CSS Crew Access document, Exhibit 8.; Captain Dunn's June and July pay records, Exhibit 9; and his Sick Leave and OJI Report from June 2020, Exhibit 14.  The HRIS Record appears to be an after-the-fact document created solely to support denial of Captain Dunn's claim.

33. Exhibit 1, the organic Plan document, grants the Company discretionary authority "to construe any uncertain, ambiguous **Plan** term" (emphasis supplied). However, Ms. Weber's assertion that "the Company [. . .] in its reasonable discretion may determine whether, on June 1, 2020, it expects a leave of absence to continue for six or more months [and that] [y]our denial for VSP benefits was based on the expectation that your leave of absence would continue for six or more months" arises only from a June 9 FAQ (Exhibit 6).

34.  The Exhibit 6 FAQ is not a Plan document and was, by its own terms and in any event not effective until June 9, 2020. No Plan document states that an employee who was on sick leave on June 1 may be denied benefits if the Company decides that it expects a leave of absence to continue for six or more months.

### FIRST CLAIM FOR RELIEF
### AGAINST DEFENDANT VSP
### FOR BENEFITS AND DECLARATION OF RIGHTS TO CONTINUING BENEFITS

35.  Plaintiff incorporates the allegations set forth above as if fully set forth herein.

36.  While an ERISA-qualified plan, the VSP is funded entirely out of the general assets of SWA.

37.  SWA, playing multiple roles as to the VSP, has conflicting pecuniary interests.  Acting in support of its own business concerns, SWA was interested both in minimizing the benefits it pays out and in inducing all and only pilots who would otherwise be on payroll to take this severance package, thereby reducing the immediate burden on SWA's finances due to the current pandemic and decrease in air travel.  Denying Captain Dunn's VSP application at a time when he was already off the payroll, and on disability leave, and anticipated by it to remain on leave for more than six months, served SWA's business interests, while causing the Plan to deny benefits that are owed pursuant to the Plan documents.

38.  SWA's decision, as a fiduciary, to deny Captain Dunn's application was not based on a fair and unbiased evaluation of the facts of his claim, but was tainted by the conflict of interest described above.  SWA had a financial interest in denying Captain Dunn's VSP eligibility because he has not been on its active payroll since late June 2020, and based on its own stated evaluation that he would continue to be paid through the disability insurance carrier for at least six months.

Defendant VSP's decision to deny Captain Dunn is therefore subject to *de novo* review by this court on the basis of the VSP's structural and actual conflict of interest.

39.  SWA, acting as fiduciary claims administrator, has persisted in the factually incorrect assertion that Captain Dunn was on medical leave of absence on June 1, rather than out on sick leave.  Both the assertion itself and SWA's failure to investigate his actual status as of that date represent breaches of SWA's fiduciary duties.

40.  Based upon the inconsistency between Captain Dunn's contemporaneous CSS Crew Access document  (Exhibit 8.) and pay records (Exhibit 9.), and the later-provided HRIS, Exhibit 15., Captain Dunn alleges that SWA edited his employment records after the fact to perpetuate its wrongful assertion as to his status on June 1.

41.  In denying Captain Dunn benefits, Defendant VSP failed to adequately investigate his eligibility and relied on a non-Plan document, the June 9, 2020 FAQ.

42.  Defendant VSP's decision to deny Captain Dunn's benefit is subject to *de novo* review for the reasons stated above, but was in any event incorrect, arbitrary, capricious, and unsupported by the evidence.

43. Captain Dunn was prejudiced in his appeal rights by the VSP's failure to comply with the requirements of 29 CFR § 2560.503-1(g)(1)(iii).

44. By the actions set forth above, Captain Dunn has been damaged in the amount of benefits to which he has been entitled, and continues to be damaged in the amount of benefits to which he remains entitled on an on-going basis.

### SECOND CLAIM FOR RELIEF
### AGAINST DEFENDANT SWA
### FOR BREACH OF FIDUCIARY DUTY

45.  Plaintiff incorporates herein the allegations above as if fully set forth.

46.   When acting solely as Dunn's employer, to the extent that SWA makes or authorizes communications directly to participants concerning the terms and conditions governing their rights under the VSP, and to the extent it makes or authorizes communications to VSP concerning applicant eligibility, SWA does so in a fiduciary capacity.

47.   In voluntarily disseminating the Exhibit 6 FAQ, SWA undertook a fiduciary role, and either intentionally or with reckless disregard for the truth misinformed its pilots about key terms of the VSP.

48.   Among the duties owed by all ERISA fiduciaries are loyalty, care, prudence, and diligence.

49.   Chief Pilot Wahl acted with real or apparent authority on behalf of SWA to assure Captain Dunn that he was eligible for the VSP, and SWA is responsible for his promises.

50.   In fabricating a document that erroneously stated Captain Dunn was on medical leave on June 1, 2020 SWA caused Captain Dunn to be denied VSP benefits.

51.   By the actions alleged above, SWA breached all and each of its duties of loyalty, care, prudence, and diligence and caused material and actual harm to Captain Dunn, in an amount to be proven at trial.  He has no plain and speedy remedy at law, and is entitled to equitable relief as set forth below.

**WHEREFORE**, Captain Dunn requests the following relief:

1.   Payment from defendant VSP of benefit payments already due and payable under the VSP;

2.   A declaration of Dunn's right to continued VSP payments; or

3.   In the alternative and if the court finds Dunn is not entitled to benefits under the Plan;

    a.   Judgement in the nature of an equitable surcharge against defendant SWA in an amount equal to the present value of Dunn's foregone VSP payments;

4.  Prejudgment interest on all amounts due at the maximum rate provided by law;

5.  Reasonable attorneys' fees and costs as set forth in ERISA § 502(g), 29 U.S.C. § 1132(g); and

6.  Such other and further relief as the court deems appropriate.

DATED THIS 1ST OF DECEMBER, 2020

RESPECTFULLY SUBMITTED,

THE KELMAN BUESCHER FIRM

/S/ELLEN M. KELMAN
/S/ MATTHEW FRITZ-MAUER
ELLEN M. KELMAN
MATTHEW FRITZ-MAUER
600 GRANT ST., STE. 825
DENVER, CO 80203
PHONE:  (303) 333-7751
FAX:  (303) 333-7758
EKELMAN@LABORLAWDENVER.COM
MFRITZMAUER@LABORLAWDENVER.COM
ATTORNEYS FOR THE PLAINTIFF

PLAINTIFF'S ADDRESS:
15440 SOFTWOOD RD.
ELBERT, CO. 80106